UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL MERULLO, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>AMICA MUTUAL INSUANCE COMPANY, )<br>)<br>Defendant. )<br>) | Case No. 22-cv-10410-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                           December 5, 2022

**I.   Introduction**

Plaintiff Michael Merullo ("Merullo") brings this putative class action against Defendant Amica Mutual Insurance Company ("Amica") alleging breach of contract (Count I), violations of Mass. Gen. L. c. 93A and c. 176D (Counts II–VI) and seeking declaratory judgment (Count VII). D. 1-1.  Defendant Amica has moved to dismiss Merullo's complaint for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).  D. 10.  For the reasons discussed below, the Court ALLOWS Amica's motion to dismiss.

**II.   Standard of Review**

"To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain 'sufficient factual matter' to state a claim for relief that is actionable as a matter of law and 'plausible on its face.'"  MIT Federal Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (quoting Bell Atl. Corp. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-

Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

### III.  Factual Background

The following factual allegations in Merullo's first amended complaint, D. 1-1, are accepted as true for the purposes of resolving the motion to dismiss.  On May 29, 2020, Merullo's vehicle was damaged in a collision with an Amica insured driver.  D. 1-1 ¶¶ 6–8.  The driver was insured under the 2016 edition of the Massachusetts standard auto policy ("2016 Standard Policy").  Id. ¶ 8; D. 11-1.  Part 4 of the 2016 Standard Policy allows for third-party recovery of property damage.  D. 11-1 at 26.  This section states:

> Part 4.  Damage to Someone Else's Property.
>
> Under this Part, we will pay for damage or destruction of the tangible property of others caused by an accident and arising from the ownership, maintenance, or use of an auto, including loading or unloading.  The amount we will pay is the amount the owner of the property is legally entitled to collect through a court judgment or settlement for the damaged property.  We will pay only if you, a household member, or someone else using your auto with your consent is legally responsible for the accident.  The amount we will pay includes, if any, applicable sales tax and the loss of use of the damaged property.  The amount we will pay does not include compensation for physical damage to, or towing or recovery of, your auto or other auto used by you or a household member with the consent of the owner, or any decreased value or intangible loss claimed to result from the property damage unless otherwise required by law.

Id.  Merullo demanded payment from Amica to repair his vehicle and for the inherent diminution in value ("IDV") the vehicle suffered as a result of the accident.  D. 1-1 ¶¶ 9–12.  IDV is calculated as the difference between the market value of an automobile immediately before a collision, and

its market value after the collision, even assuming full repair.  Id. ¶ 25.  Amica refused to provide Merullo any recovery for his vehicle's IDV.  Id. ¶¶ 17–18, 23.

## IV.   Procedural History

Merullo instituted this action in Middlesex Superior Court.  D. 1-1.  Amica removed the action to this Court, D. 1, and now moves to dismiss Merullo's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D. 10.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 17.

## V.   Discussion

### A.   Breach of Contract (Count I)

"The interpretation of an insurance policy is a question of law."  Mass. Insurers Insolvency Fund v. Premier Ins. Co., 449 Mass. 422, 426 (2007) (citation omitted).  Massachusetts courts "'interpret the words of the standard policy in light of their plain meaning, giving full effect to the document as a whole.'"  McGilloway v. Safety Ins. Co., 488 Mass. 610, 613 (2021) (quoting Given v. Commerce Ins. Co., 440 Mass. 207, 209 (2003)).  "'A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms.'"  Id. (quoting Clark Sch. for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co., 734 F.3d 51, 55 (1st Cir. 2013)).  "In discerning the meaning of the contract provisions, [the Court is] guided by 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'"  Id. at 613–14 (quoting Hazen Paper Co. v. United States Fid. & Guar Co., 407 Mass. 689, 700 (1990)).

Despite the plain language of the 2016 Standard Policy excluding third-party recovery of IDV damages, Merullo alleges that Amica is required to pay Merullo's IDV.  D. 1-1 ¶¶ 20–24.  Merullo relies primarily upon McGilloway, a recent decision of the Supreme Judicial Court.

McGilloway, 488 Mass. at 618.  In McGilloway, the Supreme Judicial Court considered whether third-party claimants could recover IDV damages under the 2008 edition of the Massachusetts standard policy ("2008 Standard Policy").  Id. at 611.  Part 4 of the 2008 Standard Policy, which covers third-party recovery states:

> Under this Part, we will pay damages to someone else whose auto or other property is damaged in an accident.  The damages we will pay are the amounts that person is legally entitled to collect for property damage through a court judgment or settlement.  We will pay only if you or a household member is legally responsible for the accident.  We will also pay if someone else using your auto with your consent is legally responsible for the accident.  Damages include any applicable sales tax and the costs resulting from the loss of use of the damaged property.

Id. at 612.  The court reasoned that "a plain reading of the phrase 'the amounts that person is legally entitled to collect for property damage through a court judgment or settlement' entitles a claimant 'to be made whole and compensated for what he has lost.'"  Id. at 614 (quoting G.E. Lothrop Theatres Co. v. Edison Elec. Illuminating Co. of Boston, 290 Mass. 189, 194 (1935)).  Since the Supreme Judicial Court previously held that "the term property damage . . . can include intangible damage such as the diminution in value of tangible property," and "[b]ecause the plain language of part 4 of the [2008] [S]tandard [P]olicy does not limit recovery to merely repair or replacement costs," the court found that the insurer may be liable for IDV damages to make the third-party claimant whole.  Id. at 614–15 (citation and internal quotation marks omitted); see id. at 616 (distinguishing Given v. Commerce Ins. Co., 440 Mass. 207, 209 (2003) in which the court concluded that IDV was excluded for a first-party claimant "under a different part of an earlier edition of the standard policy" given the express language in that policy which differed from that at issue in McGilloway).

Unlike in McGilloway, Part 4 of the 2016 Standard Policy at issue here, does not include the broader coverage of damages and explicitly excludes coverage of IDV.  Compare id. at 612

4

(2008 Standard Policy) with D. 11-1 at 26 (2016 Standard Policy).[1]  The first sentence of the 2016 Standard Policy limits third-party coverage to "damage or destruction of tangible property," D. 11-1 at 26, whereas the 2008 Standard Policy broadly states that third-party coverage includes paying "damages to someone else whose auto or other property is damaged in an accident." McGilloway, 488 Mass. at 612.  The last sentence of the 2016 Standard Policy also explicitly excludes third-party coverage of IDV, stating that "the amount [Amica] will pay does not include . . . decreased value or intangible loss claimed to result from property damage unless otherwise required by law," D. 11-1 at 26.

Despite this language in Part 4 of the 2016 Standard Policy, Merullo points to "your auto," arguing that it modifies "any decreased value or intangible loss," limiting this exclusion to first-party coverage, rather than third-party coverage.  D. 12 at 6–8.  The plain language of the 2016 Standard Policy, however, does not support Merullo's interpretation.  D. 11-1 at 26.  "[Y]our" only modifies "auto or other auto" (excluding coverage for physical damage or towing or recovery of the insured vehicle or any vehicle used by insured or another household member) and not "any decreased value or intangible loss" (which applies to "any decreased value or intangible loss claimed to result from the property damage unless otherwise required by law")  Id.  Moreover, this last sentence appears under "Damage to Someone Else's Property," and therefore, an "objectively reasonable insured" would expect "any decreased value or intangible loss" to refer to a third party.  Id.;  McGilloway, 488 Mass. at 613–14 (quoting Hazen Paper Co., 407 Mass. at 700).

---

[1] Similarly, Merullo's supplemental authority, Ercolini v. Commerce Ins. Co., No. 1884-cv-01627-BLS2 (Suffolk Super. Ct. Sept. 28, 2022), D. 20, is also distinguishable since, like McGilloway, it concerned Part 4 of the 2008 Standard Policy and not the different language of the 2016 Standard Policy at issue here.  D. 23.

That this last sentence regarding exclusions from third-party coverage includes a section that applies to the damage, towing or recovery of the insured's vehicle specifically and to IDV generally is supported by the evolution of the 2016 Standard Policy. As Amica explained, the first exclusion was added to the 2016 Standard Policy because a towing company sought recovery under Part 4 of the 2008 Standard Policy for towing a first-party claimant's vehicle who did not purchase towing coverage. Big Wheel Truck Sales, Inc. v. Safety Ins. Co., No. 16-P-318, 2017 WL 1135944, at *1–2 (Mass. App. Ct. Mar. 27, 2017). The towing company argued that the first-party claimant's damaged car on the roadway constituted "property damage" within the meaning of Part 4 of the 2008 Standard Policy, and that the insurer still owed the towing company the cost of removal, despite the first-party claimant's lack of towing coverage. Big Wheel Truck Sales, Inc., 2017 WL 1135944, at *3.

The Massachusetts Appeals Court reasoned that the "mere presence" of a damaged car is not "sufficient to constitute property damage under part 4," otherwise "every damaged or disabled vehicle on the Commonwealth's roadways would be entitled to towing at the expense of an auto insurer under the compulsory coverage of part 4." Id. Additionally, "[t]he goal of part 4 coverage is 'to protect the insured from the claims of injury or damage to others, but not to insure against economic loss sustained by the insured.'" Id. (quoting Commerce Ins. Co. v. Betty Caplatte Builders, Inc., 420 Mass. 87, 92 (1995)). Accordingly, the court affirmed the lower court, concluding that the insurer was not required to pay the towing company. Unlike the 2008 Standard Policy at issue in Big Wheel Truck Sales, Inc., Part 4 of the 2016 Standard Policy includes express language that "[t]he amount [insurers] will pay" to the insured "does not include compensation for physical damage to, or towing or recovery of, your auto or other auto used by you or a household member with the consent of the owner." D. 11-1 at 26. That is, there is specific reason that the

first phrase of the exclusionary sentence in Part 4 of the Standard Policy is limited to the insured's vehicle ("your auto"), but the second phrase excluding coverage of IDV is not.

Moreover, there is no other law that would require Amica to cover IDV under Part 4 of the 2016 Standard Policy where there exclusion of same applies "unless otherwise required by law." D. 11-1 at 26. Merullo's reliance upon Mass. Gen. Law c. 90, § 34O also does not provide support for his breach of contract claim. D. 1-1 ¶ 22; D. 12 at 9. The statute requires, in relevant part, that "[e]very policy of property damage liability insurance shall provide that the insurer will pay on behalf of the insured all sums the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including loss of use thereof, caused by accident and arising out of the ownership, maintenance or use, . . . of the insured motor vehicle." Mass. Gen. Law c. 90 § 34O. The final sentence of the preceding paragraph, however, provides that "[p]roperty damage liability insurance is insurance containing provisions as prescribed in this section, among such other provisions, including conditions, exclusions, and limitations, as the commissioner of insurance may approve." Id.; see Colby v. Metropolitan Property & Casualty Ins. Co., 420 Mass. 799, 806 (1995). That is, the statute provides only that "the policy in question must conform to [the] statute" and "the Commissioner of Insurance decides what the terms of a standard policy will be." Id. Both provisions are satisfied here. Significantly, the Commissioner approved the 2016 Standard Policy, which, in plain language, includes an express exclusion that "amount [insurers] will pay does not include . . . any decreased value or intangible loss to result from the property damage unless otherwise required by law." D. 11-1 at 26.

For all of these reasons, Merullo has failed to state a plausible claim for breach of contract, Count I.

**B.      Mass Gen. Law c. 93A and Mass Gen. Law c. 176D, § 3 (Counts II-VI)**

Merullo brought five claims all of which fail to allege that Amica violated Mass. Gen. L. c. 93A, § 2, D. 1-1 ¶¶ 72–86, and Mass. Gen. L. c. 176D, §§ 3(9)(c), 3(9)(d), 3(9)(f) and 3(9)(n) for failing to pay his IDV damages.  Id. ¶¶ 87–129.

Mass. Gen. L. c. 176D, § 3(9) "regulates the insurance business and identifies unfair claim settlement practices."  McGilloway, 488 Mass. at 618 (citation and internal quotation marks omitted).  "A violation of [Chapter] 176D amounts to an unfair or deceptive act or practice for purposes of claims made under [Chapter] 93A."  Id. (citation and internal quotation marks omitted).  "Recovery under [Chapter] 93A for a violation of [Chapter] 176D, § 3(9), is unlikely when '[a]n insurance company . . . in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy.'"  Id. (quoting Gulezian v. Lincoln Ins. Co., 339 Mass. 606, 613 (1987)).  Even in McGilloway, 488 Mass. at 618, where the court reversed the denial of coverage under Part 4 of the 2008 Standard Policy, it affirmed summary judgment in favor of the insurer on the Chapter 93A and Chapter 176D claims where the insurer had relied upon a plausible, although ultimately incorrect, interpretation of its policy."  Id. (internal quotation marks and citation omitted).

Dismissal of these claims is warranted here where the Court has concluded that Amica's interpretation was not only plausible, but also correct.  As to each of the grounds of the alleged Chapter 176D violations for "unfair settlement practices," Merullo alleges violation of Section 3(9)(c) (which prohibits "[f]ailing to adopt and implement reasonable standard for the prompt investigation of claims arising under insurance policies") (Count III), Section 3(9)(d) (which prohibits "[r]efusing to pay claims without conducting a reasonably investigation based upon all available information") (Count IV), Section 3(9)(f) (which prohibits "[f]ailing to effectuate

prompt, fair and equitable settlements of claims in which liability has become reasonably clear") (Count V) and Section 3(9)(n) (which prohibits "[f]ailing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of compromise settlement") (Count VI). As to each of these grounds, Merullo has not alleged a factual basis for them aside from the underlying failure to pay IDV, which was the basis of his breach of contract claim, and also has failed to point to "any evidence of bad faith or ulterior motives" for Amica's rejection of his claims for IDV damages. McGilloway, 488 Mass. at 618 (citation and internal quotation marks omitted). Merullo, therefore, fails to allege plausibly that Amica violated Mass. Gen. L. c. 176D, § 3(9) and, accordingly, Counts III-VI are dismissed.

Merullo also asserts a separate claim under Mass. Gen. L. c. 93A § 2, Count II. "To plausibly state a Chapter 93A claim premised on a deceptive act, the plaintiff must allege (1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a casual connection between the seller's deceptive act or practice and the consumer's injury." Tomasella v. Nestle USA, Inc., 962 F.3d 60, 71 (1st Cir. 2020) (citation and internal quotation marks omitted). "To be actionable, the challenged misconduct must rise to the level of an extreme or egregious business wrong, commercial extortion, or similar level of rascality that raises an eyebrow of someone inured to the rough and tumble of the world of commerce." Peabody Essex Museum, Inc. v. United States Fire Ins. Co., 802 F.3d 39, 54 (1st Cir. 2015) (citation and internal quotation marks omitted). Here, the basis of this claim is that the same as the factual basis for the other claims; that, Amica was required to pay IDV and failed to do so. D. 1-1 ¶¶ 72–86. Here, where the Court has concluded that Amica had a legal basis for doing so given the express language of Part 4 of the 2016 Standard Policy, Amica's failure to pay same does not rise to the

level of an unfair or deceptive act and, therefore, Merullo, also fails to state a claim that Amica violated Mass. Gen. L. c. 93A § 2.

### C. Declaratory Judgment

Merullo seeks a declaration that he is entitled to recovery of his IDV damages. D. 1-1 ¶¶ 130–133. "When evaluating a motion to dismiss a claim for declaratory relief under rule 12(b)(6), a judge must proceed in two steps." Buffalo-Water 1, LLC v. Fidelity Real Estate Company, LLC, 481 Mass 13, 18 (2018). "First, the judge must determine whether the claim was properly brought." Id. (citation and internal quotation marks omitted). "A claim is properly brought when the plaintiff demonstrates that an actual controversy exists, that the plaintiff has legal standing to sue, and that all necessary parties have been joined." Frederic v. Mass. Comm'n Against Discrimination, No. 20-P-809, 2021 WL 2742589, *2 (Mass. App. Ct. July 1, 2021) (citing Buffalo-Water 1, LLC, 481 Mass. at 18). "Where the claim is 'properly brought,' . . . the judge must proceed to the second step: determining whether the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant's motion to dismiss." Buffalo-Water 1, LLC, 481 Mass. at 18.

Merullo's declaratory judgment claim fails on this second step. Here where, for the reasons stated above, the Court concludes that Merullo's underlying claims shall be dismissed for failure to state a claim under Rule 12(b)(6), dismissal of his claim for declaratory judgment that he is entitled to IDV under Part 4 of the 2016 Standard Policy is likewise warranted. See id. at 20.

### VI. Conclusion

For the foregoing reasons, the Court ALLOWS Amica's motion to dismiss, D. 10.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge